UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEONARD C. ANDERSON, SR.,

      Plaintiff,

v.                                                    Case No. 3:11-cv-910-J-37JBT

BRUNSWICK CORPORATION,

      Defendant.

## ORDER

This cause is before the Court on the following:

1. Defendant Brunswick Corporation's Motion for Summary Judgment and Memorandum in Support (Doc. 32), filed March 15, 2013;

2. Plaintiff's Opposition to Summary Judgment (Doc. 33), filed March 28, 2013; and

3. Defendant Brunswick Corporation's Reply Memorandum in Support of its Motion for Summary Judgment (Doc. 34), filed April 10, 2013.

Upon consideration, the Court hereby grants Defendant's motion.

## BACKGROUND

Plaintiff, proceeding *pro se*, is an African American who worked for Defendant[1] as a temporary employee beginning in 2004 and as a glass finisher from 2005 to 2010. (Anderson Dep., Doc. 32-1, 26:2–6, 26:16–20.) Plaintiff alleges that during his

---

[1] Plaintiff lists "Sea Ray Boats, Brunswick Corporation, etc." as "Defendants" in the Second Amended Complaint. (Doc. 12.) The Court treats the entity Sea Ray Boats as indistinguishable from Defendant Brunswick Corporation, as service was waived as to Defendant Brunswick Corporation only (Doc. 14, p. 2) and Sea Ray Boats is a division of Defendant Brunswick Corporation (Anderson Dep., Doc. 32-1, 31:19–25; Doc. 32, p. 2 n.2).

employment, coworkers spread a rumor that he had been convicted of rape, threw an acetate can at him, carried a heavy seat over his head, broke into his locker, trashed his work area, and damaged parts that he had been working on when he was away from his workspace. (Doc. 12, pp. 4–6.) He alleges that supervisors called him crazy, commented that workers did not need training, stated that Plaintiff could be fired "for wearing a brown shirt," and gave him low evaluations until he disputed them and they were revised. (*Id.* at 13–14; Anderson Dep., Doc. 32-1, 79:1–7, 105:1–19.) He also alleges that Defendant's Human Resources department ("HR") failed to keep information about his tuition reimbursement private and that on one occasion his reimbursement was delayed. (Doc. 12, pp. 8–9.)

Defendant's Employee Handbook provides that "[f]ighting or violence on Company premises," "the threat of bodily violence," and "[h]arrassment, intimidation, coercion, or molesting of other employees" are violations that may lead to involuntary discharge. (Doc. 32-10, p. 9.) The Handbook also provides for progressive discipline, whereby Defendant may choose to warn an employee for misconduct before discharge. (*Id.* at 7.) Plaintiff signed a document acknowledging that he read and understood these policies. (*Id.* at 10.)

In 2008, Plaintiff was involved in an altercation with a white coworker, Dave Nawrocki. (Doc. 32-12; Anderson Dep., Doc. 32-1, 65:14–15.) Plaintiff testified that Nawrocki cornered Plaintiff, "threw himself" on Plaintiff, and yelled and cursed at Plaintiff. (Anderson Dep., Doc. 32-1, 68:3–7; 71:6–72:2.) Plaintiff further testified that he only made physical contact with Nawrocki when he crossed his arms in self-defense to deescalate the situation. (*Id.* at 68:8–25.) Defendant found that Plaintiff and Nawrocki were equally at fault. (Docs. 32-13, 32-16.) Both were disciplined with a suspension, a

referral to an Employment Assistance Program ("EAP"), and a last chance agreement. (Docs. 32-13, 32-14, 32-15, 32-16.) The last chance agreement, which Plaintiff signed, warned Plaintiff that if he engaged in future misconduct, he would be terminated. (Doc. 32-13.)

In 2010, Plaintiff got into another altercation with another white coworker, Jeff Thomasson. (Docs. 32-17, 32-18, 32-19.) Plaintiff maintains that Thomasson instigated the situation and that Plaintiff responded merely by "defending [him]self verbally." (Doc. 32-17; Anderson Dep., Doc. 32-1, 115:19–25.) Thomasson stated that Plaintiff initially blocked Thomasson from clocking out at the end of the day and pushed Thomasson; only then did Thomasson push Plaintiff back. (Doc. 32-19, p. 2.) Defendant terminated Plaintiff's employment for his involvement. (Docs. 32-20, 32-23, 32-24.) Thomasson received a suspension, an EAP referral, and a last chance agreement (Doc. 32-25), the same discipline that Plaintiff received after his first infraction.

In 2010, Nawrocki was terminated for violating his last chance agreement after a second, unrelated infraction. (Doc. 32-26.)

Plaintiff brings a race discrimination claim under Title VII, alleging that he was disparately treated based on his race and subjected to a hostile work environment.[2] (Doc. 12.) Defendant moved for summary judgment. (Doc. 32.) Plaintiff responded. (Doc. 33.) Defendant replied. (Doc. 34.) This cause is now ripe for the Court's

---

[2] While Plaintiff lists "Retaliation through Failure to Investigate" and "Retaliation through Petition to Reverse Employee Unemployment Benefits and Classification of Employees" as acts of which he complains (Doc. 12, ¶ 4), the Court finds that Plaintiff has not actually stated a Title VII retaliation claim. Plaintiff failed to plead any facts supporting a claim of retaliation. Plaintiff alleges that he complained about the allegedly hostile work environment (*id.* at p. 17), but he did not allege that Defendant took adverse action against him because of his complaints. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Thus, the Court finds that Plaintiff has not pled a retaliation claim.

3

adjudication.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted).

## DISCUSSION

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff claims that he was disparately treated because of his race in violation of Title VII. (Doc. 12, ¶¶ 4–5.) Disparate treatment can take two forms: (1) a discriminatory, tangible employment action such as a discharge or suspension; or (2) a hostile work environment that materially changes an employee's terms and conditions of employment. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). Plaintiff brings his discrimination claim under both theories.

**1. Tangible Employment Action**

To prove discrimination under a tangible employment action theory, the plaintiff initially bears the burden of showing that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) his employer treated him less favorably than other similarly situated individuals outside of his protected class; and (4) he was qualified for his job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Marshall v. Mayor Alderman*, 366 F. App'x 91, 98 (11th Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802–03; *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant meets this burden, the plaintiff has the opportunity to demonstrate that the defendant's articulated reason is "a mere pretext for discrimination." *Holifield*, 115 F.3d at 1565.

Here, Defendant concedes that Plaintiff is African American, that he suffered an adverse employment action in the form of suspension and termination, and that he was qualified for his job. (*See* Doc. 32, p. 9.) However, the parties disagree as to whether Plaintiff was treated less favorably than similarly situated non-African American employees. (*Id.*)

A comparator must be "similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562. "In determining whether employees are similarly situated[,] . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* Because Plaintiff alleges that he was not at fault in either altercation for which he was disciplined, the similarly situated comparator must be a non-African American employee who was involved in an

altercation on Defendant's premises but was a non-aggressor. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001) (stating that on a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party). Though it is Plaintiff's burden to identify such a comparator, *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000), he has not done so.

While Plaintiff points to Nawrocki and Thomasson, both non-African Americans involved in altercations, they are not similarly situated comparators because they are alleged to have been the aggressors in the altercations with Plaintiff, unlike Plaintiff who is alleged to have been the non-aggressor. Thus, even though there is a factual dispute as to whether Plaintiff was an innocent non-aggressor in either altercation, this dispute is not material and does not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant and unnecessary will not be counted.").

Even if Nawrocki and Thomasson were similarly situated comparators, neither of them were treated more favorably than Plaintiff. After the 2008 incident, both Nawrocki and Plaintiff received the same discipline—suspension, EAP referral, and last chance agreement. (Docs. 32-13, 32-14, 32-15, 32-16.) After the 2010 incident, Plaintiff did receive more severe discipline than Thomasson—termination (Docs. 32-20, 32-23, 32-24) versus suspension, EAP referral, and last chance agreement (Doc. 32-25)—but this occurred because it was Plaintiff's second violation. Thomasson's discipline was identical to the discipline that Plaintiff received after his first violation. In fact, after Nawrocki committed a second violation, he was terminated just like Plaintiff. (Doc. 32-26.) Defendant thus applied its progressive discipline policy in the same way to Plaintiff,

Nawrocki, and Thomasson. Thus, Plaintiff was not treated less favorably than Nawrocki or Thomasson, even if they were considered similarly situated comparators.

Because Plaintiff has not presented a similarly situated comparator who was treated more favorably than himself, he has not met his burden of proving a *prima facie* case of discrimination. As such, Defendant's motion for summary judgment is due to be granted as to the tangible employment action theory.

### 2. Hostile Environment

To prove a hostile work environment, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to unwelcome conduct; (3) the conduct was based on his race; (4) the conduct was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) there is a basis for holding his employer liable. *Reeves*, 594 F.3d at 808. Here, Plaintiff belongs to a protected class and he was subject to conduct that he did not find welcome, but he has failed to establish that the conduct was based on his race or that it was sufficiently severe or pervasive to alter his employment conditions.

Some of the conduct that Plaintiff endured was disrespectful, unprofessional, and harassing, but this does not mean that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" sufficient to constitute a Title VII violation, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), as no coworker ever spoke a racial epithet or made a racially charged comment. Plaintiff evinces a belief that "[a]n overall climate of hostility exists for African Americans" and that "[Defendant's] discrimination against African Americans is well-known within the Black community." (Doc. 12, pp. 13, 17.) However, there was nothing racially motivated about any of the incidents of which Plaintiff complains. Additionally, Plaintiff admits that the hostility that

7

he experienced was due in part to coworkers resenting his tuition reimbursements and in part to his past complaints about the alleged hostility. (*Id.* at 13, 16.)

Because the conduct to which Plaintiff was subjected was not based on race, Plaintiff has failed to meet his burden of proving the third element of a *prima facie* case of race discrimination. *See Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (concluding that the plaintiff failed to prove a *prima facie* race discrimination case when "the behavior she observed and experienced did not consist of any racially derogatory statements or acts" and the plaintiff merely evinced a belief that one of her coworkers was racist and that the school system she worked for was affected by institutional racism).

Plaintiff also has not shown that the conduct was sufficiently severe or pervasive. While the alleged acetate can and seat incidents were physically threatening (though not race-related), many of the alleged incidents were benign, such as the alleged comment about training and HR's alleged actions. While Plaintiff subjectively perceived all of the incidents that he experienced to be hostile, such a perception was not objectively reasonable. *See Satchel*, 251 F. App'x at 630 (explaining that to satisfy the severe and pervasive element of a *prima facie* case, "the employee must show that [he] subjectively perceived the harassment as severe and pervasive enough to change the terms or conditions of employment" and present evidence "that this perception was objectively reasonable"); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012) ("The burden is on the plaintiff to demonstrate that he perceived, and that a reasonable person would perceive, the working environment to be hostile or abusive.").

Because Plaintiff failed to establish that the unwelcome conduct was based on his race or was sufficiently severe or pervasive to constitute a hostile work environment,

he has not made out a *prima facie* case. As such, Brunswick's motion for summary judgment is due to be granted as to the hostile work environment theory.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant Brunswick Corporation's Motion for Summary Judgment and Memorandum in Support (Doc. 32) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff. Plaintiff shall take nothing on his claims. Defendant is awarded costs.

3. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on June 4, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

*Pro Se* Party

Counsel of Record